**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HICKORY CAPITAL, LLC,<br><br>                    *Plaintiff*,<br><br>        v.<br><br>SME CAPITAL, LLC, STEVE FELDMAN, and, GEORGE KING,<br><br>                    *Defendants.* | ECF Case No. _____<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff HICKORY CAPITAL, LLC ("Hickory"), by its attorneys, SUTTON SACHS MEYER PLLC, as and for its verified complaint for damages for breach of contract, breach of fiduciary duty, and unjust enrichment sates against the above captioned defendants, as follows:

## PRELIMINARY STATEMENT

1.       This lawsuit seeks to recover monetary damages incurred by Plaintiff Hickory for: (A) breach of contract committed by Defendant SME Capital LLC ("SME Capital") where the Plaintiff was to act as the placement agent for Defendant SME Capital LLC concerning an investment opportunity intended to be marketed thereby for placement in an affiliated entity thereof known as SME Series H, LLC, which Plaintiff was ultimately made a member therein; (B) breach of certain fiduciary duties that were owed to Plaintiff Hickory by Defendant SME Capital arising from being members in the aforesaid affiliate entity from which the funds for the investment opportunity were ultimately diverted to another entity that Plaintiff did not have an interest in, and which Defendant SME Capital is a member thereof; (C) personal liability and/or director liability against Defendant Steve Feldman ("Feldman") and/or Defendant George King ("King") as officers and/or directors of the affiliate entity upon a finding that they acted in bad baith when consenting to such action on behalf of the affiliate entity and which they personally benefited from as members of Defendant SME Capital to the detriment of the Plaintiff; and (D)

unjust enrichment for the services that Plaintiff Hickory provided to Defendant SME Capital, which benefited therefrom and ultimately to the detriment of the Plaintiff.

## JURISDICTION & VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367.

3.      Venue is appropriate where the above captioned parties agreed pursuant to Section 10 of the Placement Agent Agreement entered by and between Plaintiff Hickory and Defendant SME Capital on or about July 9, 2019 that "any disputes [arising from the Placement Agreement] shall be adjudicated in US Federal Court in New York, New York."

4.      Further, Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district as well as where the above captioned Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process.

## THE PARTIES

5.      Plaintiff Hickory is a privately held Delaware limited liability company with a principal place of business in located in the State of New Jersey at 132 Central Avenue, Hillsdale, New Jersey 07642.

6.      Plaintiff Hickory is a sole member limited liability company whose sole member is Mr. Douglas Evans ("Evans").

7.      Evans is a resident of the State of New Jersey.

8.      Defendant SME CAPITAL LLC ("SME Capital") is a privately held New York

limited liability.

9.      Defendant SME Capital has a principal place of busines located at 750 Third Avenue, 11th Floor New York, New York 10017.

10.      Defendant STEVE FELDMAN ("Feldman") is resident of the State of New York having a principal place of business located at 750 Third Avenue, 11th Floor New York, New York 10017.

11.      That Defendant Feldman is a member of Defendant SME Capital.

12.      That Defendant Feldman is the managing member of SME Capital.

13.      The Defendant Feldman is the Chairman of Defendant SME Capital.

14.      That Defendant George King ("King") is a resident of the state of New York having business address from which he conducts business located at 750 Third Avenue, 11th Floor New York, New York 10017.

15.      That Defendant King is a member of SME Capital.

16.      Upon information and belief Defendant King holds at least a forty (40%) membership interest in Defendant SME Capital.

17.      Upon information and belief, Defendant Feldman, by virtue of being the managing member and/or chairman of SME Capital has the decision-making responsibility and operational control for Defendant SME Capital.

18.      Upon information and belief Defendant King, by virtue of being a member of Defendant SME Capital, has decision-making responsibility for Defendant SME Capital.

19.      That upon information and belief Defendant SME Capital members, to the extent any so exist other than Defendants Feldman and King (collectively the Defendant "Individuals"), are all residents of the State of New York and/or are not resident(s) of the State of New Jersey.

## FACTS

20.    On or about July 9, 2019 Plaintiff and Defendants entered into a Placement Agent Agreement (the "Contract").

21.    Prior thereto Evans had been approached by Defendant Feldman to provide, among other things, consulting services with respect to a certain investment opportunity and offering that Evans was structuring for private placement to raise investment capital therefor.

22.    More specifically, the investment opportunity (the "Opportunity") at that time was to raise capital from accredited investors for the purposes of purchasing small and medium business advances and loans from certain online lending platforms and to seek to earn profits for the company that they would set up and be in control thereof for which the placement of any such investments by investors would be made to.

23.    At that time Defendants represented to Evans that they were looking to raise upwards of Fifty Million Dollars ($50,000,000.00) from potential accredited investors.

24.    Defendant Feldman advised Evans that he needed to "partner up" with someone who was a registered broker dealer who could pitch and/or market the Opportunity to accredited investors for consideration as well as make introductions to Evan's own points of contact for accredited investors and/or related institutions that may be of interest in investing in the Opportunity and/or could provide information and/or leads to others who would.

25.    Further, Defendant Feldman represented to Evans that he could use guidance on how best to best prepare and structure the Opportunity for presentation to investors in a private placement memorandum

26.    A private placement memorandum ("PPM") details the nature of the investment opportunity and securities associated therewith being offered by the company for placement, the management team and/or structure of the company that is offering opportunity, and the projections

on potential returns, as well as articulating the investor risks associated therewith.

27.     Upon further meetings, discussions, and communications between Evans and Defendant Individuals it became apparent that Evans, as the managing member for Plaintiff Hickory, possessed the very aforementioned capabilities, experience, industry knowledge, and related broker licenses and/or financial industry registrations and/or certifications, as well as contacts to the very type of accredited investors and/or institutions that Defendant Individuals were looking to market the Opportunity to.

28.     As such Defendant Individuals offered Evans for Plaintiff Hickory to act as the placement agent for the Opportunity that Defendant SME Capital would be marketing for investment through a soon to be formed company that Defendant Individuals advised would be called SME Series H, LLC ("SME Series").

29.     Upon information and belief, Defendant Individuals made statements, promises, and assurances to Evans in an effort to further induce Evans to agree for Plaintiff Hickory to be the placement agent for Defendant SME Capital concerning the marketing of the Opportunity, which included but were not limited to agreeing to make Plaintiff Hickory a member of the SME Series once it was formed.

30.     Doing would not only allow Plaintiff Hickory to receive compensation for its services that would be rendered to Defendant SME Capital as its placement agent as previously set forth herein but derive additional financial benefits by virtue of being a member of SME Series once it was set up and operational.

31.     However, Evans was concerned with potentially being cut out from being able to earn distributions or fees earns on capital raised and expressed his desire that he would only go through with acting as the placement agent if there was a non-circumvention provision that was appliable to all parties.

32.     Defendant Individuals agreed that such a provision would be included in any placement agent agreement and/or operating agreement of the entity that Plaintiff Hickory would have a member interest in as previously set forth.

33.     Further Defendant Individuals, to further induce Plaintiff act as the placement agent address his concerns to not get "cut out" of any fees that could be earn from its efforts, offered to pay Plaintiff a fee of one and a half percent (1.5%) on any capital that was received by any funding source that Plaintiff introduced Defendant SME Capital regardless of whether such introduction was made directly or indirectly.

34.     The offer of compensation in the 1.5% fee was attractive to Evans because Plaintiff Hickory would receive a fee even when a source of funding that Plaintiff Hickory did not directly introduce to Defendant SME Capital did invest– meaning that if the source of funding came from a "source of a source" with the former being not directly introduced by Plaintiff, but indirectly introduced by virtue of the latter being directly introduced by Plaintiff Hickory and with the latter then introducing the former to the Company Plaintiff would still earn its fee.

35.     Given that Plaintiff Hickory would get the additional benefits of being a member of SME Series and earn a fee on even indirect introductions of funding sources Plaintiff Hickory agreed to act as the placement agent for Defendant SME Capital and the soon to be formed SME Series.

36.     On July 30, 2019 Plaintiff Hickory and Defendant SME Capital formed SME Series H, LLC (previously referenced to as SME Series)

37.     SME Series is a limited liability company organized under the laws of the State of New York.

38.     On August 1, 2019, Plaintiff Hickory and Defendant SME Capital entered into an operating agreement for SME Series.

39.     Pursuant to the operating agreement for SME Series (the "Operating Agreement")

and Contract Plaintiff Hickory held a fifteen percent (15%) membership interest therein with

Defendant SME Capitol holding an eighty-five percent (85%) membership interest.

40.     Pursuant to the Operating Agreement Defendant Feldman is the Chairman of SME

Series.

41.     Pursuant to the Operating Agreement Defendant King is the President of SME

Series.

42.     Plaintiff Hickory continued to provide consulting services on an ongoing basis to

Defendant SME Capital and the Defendant Individuals as it had when entering into the Contract

in July of 2019 through the summer and fall of 2019 as provided for therein, including, but not

limited to advising Defendants on structuring the Opportunity; reviewing and providing feedback

on multiple drafts of the "offering documents", including, but not limited to the private placement

memorandum for the Opportunity being marketed for placement through/with SME Series;

making introductions with multiple funding sources for Defendants SME Capital and SME Series,

as well as planning, attending, and facilitating presenting the Opportunity at two conferences for

the National Due Diligence Alliance for the benefit of Defendants.

43.     In November 2019, after Plaintiff attended and presented the Opportunity at the

second of the two National Due Diligence Alliance conferences attended, there appeared to be

substantial interest from potential investors to fund SME Series for the Opportunity that Plaintiff

Hickory was marketing on both Defendant SME Capital's and SME Series behalf and to their

benefit as provided in the Contract and as a member of SME Series.

44.     As interest grew from Plaintiff's efforts and undertakings on behalf of Defendant

SME Capital and SME Series as previously set forth herein Defendant Individuals advised Evans

that they intended to use a separate entity that Plaintiff Hickory was not a member of or had a

placement agent agreement with which would receive all funding concerning the Opportunity that, pursuant to the Contract and Operating Agreement, was intended to be received by SME Series.

45.    The separate entity is what is referred to as a "related party" in the accounting industry.

46.    Upon information and belief Defendant SME Capital and/or Defendant Individuals are members of the unrelated entity that Defendant SME Capital inserted in place of SME Series to receive the funding from the sources that the Opportunity was marketed to for placement originally intended in SME Series.

47.    Evans, on behalf of Plaintiff Hickory voiced his opposition to the use of some unaffiliated entity because doing so would effectively cut Plaintiff Hickory out of the financial benefit it had expected to receive as member of Defendant SME Series as well as questioned the legality thereof.

48.    Further, when Evans raised the issue of Plaintiff Hickory's fees that it was supposed to receive on the funding sources, Defendant Individuals advised him that they would still pay him according to the Contract, but that they would not agree to enter into a new placement agreement of any kind for the new interested entity they intended to use.

49.    Despite Plaintiff Hickory capital numerous attempts to discuss the issue further and find a resolution thereto with the Defendant Individuals the Defendant Individuals ceased responding to Plaintiff Hickory's inquires in late January 2020.

50.    Upon information and belief Defendants received funding from funding sources that Plaintiff Hickory introduced them to, whether "directly or indirectly" as provided for in the Contract.

51.    Upon information and belief Defendant Individuals received funding at an amount that is believed to be upwards of $40,000,000.00 but not less than $10,000,000.00 based upon the

target capital raise as provided for in the Contract, Operating Agreement, and related versions of the PPM for SME Series.

## COUNT I
### (Breach of the Placement Agent Agreement)

52.    Plaintiff Hickory repeats and realleges all paragraphs above as though fully set forth herein.

53.    Plaintiff Hickory and Defendant SME Capital entered into a valid Contract on July 9, 2019.

54.    Defendant Individuals, as members of Defendant SME Capital with Defendant Feldman being a signature on the Contract, were aware of the terms provided therein.

55.    Plaintiff performed its obligations pursuant to the Contract, specifically where Plaintiff, among other things, provided guidance about the structure of the Opportunity, performed review and analysis of and aided in the preparation of the PPM, advised on best strategies for obtaining funding and positioning the SME Series H, LLC to attract such funding, advised the Company's management about the proper conduct of such an offering under Regulation D of the securities laws, recommend various broker/dealer conferences for the Plaintiff and members of SME Series to attend on its behalf for the purposes of marketing the Opportunity thereat, assisted in the preparations for presenting at such conferences, recommended and introduced the Opportunity to individual broker/dealers, their agents and registered representatives, and made introduction to funding sources to Defendant SME Capital and SME Series as contemplated therein.

56.    That Defendant SME Capital breached the Contract by way of its members, officers, employees, and/or agents, at the direction, approval, or with Defendant Feldman's consent to circumvent the terms and conditions therewith by substituting an unrelated entity to which all funding concerning the Opportunity that was being marketed by Plaintiff pursuant to the Contract

was diverted thereto thereby depriving Plaintiff its rightful compensation as agreed upon therein.

57.     That the aforesaid actions and/or conduct of Defendants constitutes a material breach(es) of the Contract.

58.     That Defendants aforesaid breach(es) were material and fundamental to the Contract where said breach(es) deprived Plaintiff Hickory its rightfully compensation earned for such services rendered based on the fee structurer so agreed upon in an amount that is be determined at trial, but which is believed to be no less than $1,000,000.00.

<u>**COUNT II**</u>
**(Breach of Fiduciary Duty under the Operating Agreement)**

59.     Plaintiff Hickory repeats and realleges all paragraphs above as though fully set forth herein.

60.     As members of SME Series Defendant SME Capital and Plaintiff Hickory Capital owe one another certain fiduciary duties.

61.     That Defendant SME Capital's actions and/or conduct of inserting substituting an unrelated entity to receive, hold, and/or disburse all the funding that SME Series was to supposed to receive from investment in the Opportunity that was being marketed for placement therein, but now which would be diverted therefrom constituted was an act of self-dealing by Defendant SME Capital where SME Capital would no longer have to share any distributions of profits derived from the investments in the Opportunity with Plaintiff Hickory as a result thereof contrary to the Operating Agreement.

62.     That SME Capital's aforementioned conduct and/or action as previously set forth herein constituted SME Capital's usurpation of a business opportunity from SME Series that Plaintiff Hickory would have benefited therefrom, but for SME Capital's aforesaid conduct and/or actions with respect thereto.

63.     That SME Capital's aforementioned conduct and/or action as previously set forth

herein was at the direction of Defendant Individuals as the members thereof in pursuit of the business therefor.

64.     That Defendant Individuals, having the controlling membership interest in Defendant SME Capital, directly benefited from Defendant SME Capital's aforementioned conduct and/or actions to the detriment of Plaintiff Hickory and SME Series.

65.     SME Capital's aforementioned conduct was a breach in its fiduciary duties owed to Plaintiff Hickory as a member in SME Series.

66.     That Defendant Feldman's actions, as the Chairman of SME Series, in either consenting to such use of an unrelated entity as previously provided for herein and/or failing to take action necessary to oppose such aforesaid use was in bad faith and a breach of his duty of loyalty and/or  good faith by engaging in the conduct previously set forth herein that was for his own personal benefit and to the detriment of SME Series and Plaintiff Hickory as a member thereof.

67.     That Defendant King's actions, as the President of SME Series, in either consenting to such use of an unrelated entity as previously provided for herein and/or failing to take action necessary to oppose such aforesaid use was in bad faith and a breach of his duty of loyalty and/or good faith by engaging in the conduct previously set forth herein that was for his own personal benefit and to the detriment of SME Series and Plaintiff Hickory as a member thereof.

68.     That as a result of SME Capital's breach in its fiduciary duties Plaintiff Hickory had been damaged in an amount that is to be determined at trial, but which is believed to be not less than $7,800,000.00 as so based on the up to $40,000,000.00 target capital raise sought by SME Series and referenced in the Operating Agreement.

69.     That upon a finding for such breach of fiduciary duties SME Series officer(s) and/or member(s) responsible therefor may be held personally liable for such amounts.

## COUNT III
### (Unjust Enrichment)

70.     Plaintiff Hickory repeats and realleges all paragraphs above as though fully set forth herein.

71.     That Plaintiff Hickory provided the aforementioned consulting services and made introductions to funding sources to the benefit of Defendant SME Capital.

72.     That Defendant SME Capital was enriched as a result thereof and at Plaintiff Hickory's expense.

73.     Equity and good conscience requires restitution to Plaintiff Hickory because by conferring a benefit to the Defendant SME Capital without compensation thereof, unjustly enriched the Defendants, to the detriment of the Resulticks in an amount that is not less than $1,000,000.00 constituting fair and just compensation therefor.

## COUNT IV
### (Breach of the Implied Covenant of Good Faith)

74.     Plaintiff Hickory repeats and realleges all paragraphs above as though fully set forth herein.

75.     That the aforementioned conduct of the Defendants frustrated the purpose for which of the Contract and/or Operating Agreement where such aforementioned conduct thereof injured Plaintiff Hickory Capital from its right to receive the fruits of the Contract and/or the Operating Agreement.

76.      That Defendants conducted breached the implied covenant of good faith injuring the Plaintiff in an amount to be determined at trial, but which is not less than $1,000,000.00.

77.     That Defendants conduct breached the implied covenant of good faith injuring the Plaintiff in an amount to be determined at trial, but which is not less than $7,800,000.00.

## RELIEF SOUGHT

**WHEREFORE**, the Plaintiff Hickory Capital LLC respectfully requests that the Court

grant the following relief:

(A)    As to Claim I: (i) the Court declares, adjudges and decrees that Defendant SME Capital LLC breached the Contract and damaged the Plaintiff as a result thereof in an amount to be determined at trial, but which is not less than $1,000,000.00; (ii) prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate; and (iii) reasonable attorneys' fees and expenses of this action, as otherwise provided by law; and

(B)    As to Claim II:  (i) the Court declares, adjudges and decrees that Defendant SME Capital LLC breached its fiduciary duties and damaged Plaintiff and as a result thereof in an amount to be determined at trial, but which is believed to be not less than $7,800,000.00; and (ii) upon a finding for such breach of fiduciary duties holding Defendants Feldman and King, as the SME Series officer(s) and/or member(s) responsible therefor holding personally liable for such amounts; (iii) prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate; and (iii) reasonable attorneys' fees and expenses of this action, as otherwise provided by law; and

(C)    As to Claim III: (i) an award of damages in an amount to be determined at trial, but that which is not less than $1,000,000.00; (ii) prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate; and (iii) reasonable attorneys' fees and expenses of this action, as otherwise provided by law; and

(D)    As to Claim IV: (i) an award of damages in an amount to be determined at trial, but that which is not less than $1,000,000.00; (ii) prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate; and

(E)    For such other and further relief as this Court deems just and proper.

.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and upon the applicability

thereof Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       December 19, 202

**LORENC LAW LLC**
*Attorneys for Plaintiff Hickory Capital, LLC*

<u>Robert Lorenc, Esq.</u>
62 West 45th Street, Suite 903
New York, NY 10036
t. (212) 628-0562
e. Robert@lorenclaw.com


**SUTTON SACHS MEYER PLLC**
*Attorneys for Plaintiff Hickory Capital, LLC*

<u>Zachary G. Meyer, Esq.</u>
14 Penn Plaza, Suite 1315
New York, NY 10122
t. (212) 480-4357
e. Zachary@ssm.law

**<u>VERIFICATION</u>**

STATE OF NEW YORK    )
                      ) ss:
COUNTY OF NEW YORK  )

       Douglas Evans, of full age, being duly sworn according to law, upon his oath, deposes and says:

       1.     I am the managing member of Plaintiff Hickory Capital LLC.

       2.     I have read the forgoing Verified Complaint and all the allegations contained therein. Except as to the allegations upon information and belief, which allegations I believe to be true, all the allegations in the Complaint are true based on my personal knowledge, my review of the records, or information available to me through being a member of Plaintiff Hickory Capital LLC.

_____
Douglas Evans

December 20, 2022

Sworn and subscribed to Before me
This _20_ day of December 2022   KF

_____
Notary Public

KEITH FIELDS
NOTARY PUBLIC
MY COMMISSION EXPIRES 9-30-2026